**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALNITA MILLER,                          :
                                        :
         Plaintiff,                     :
                                        :
    v.                                  :   Civil Action No. 08-1945 (JR)
                                        :
HEALTH SERVICES FOR CHILDREN            :
FOUNDATION, *et al.*,                   :
                                        :
         Defendants.                    :

**MEMORANDUM**

        Alnita Miller sues her former employer Health Services
for Children with Special Needs alleging violations of the Fair
Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et
seq.*, retaliation under the FLSA, violations of the Employee
Retirement Income Security Act of 1974, as amended, 29 U.S.C.
§§ 1140 *et seq.*, and common law defamation.  Pending before the
court is the defendant's motion for summary judgment.  Because
the plaintiff's job was exempt from FLSA coverage, because there
is insufficient evidence to support retaliatory animus or a
violation of ERISA, and because the allegedly defamatory
statements were privileged and were not published with malice,
the defendant's motion will be granted.

**Background**[1]

        HSCSN is a non-profit care management network that
coordinates health and education services for District of

_____

        [1]This Background section includes only undisputed facts.

Columbia children who have severe health issues.  MSJ at 1.
Starting in about July 2004, plaintiff worked for HSCS as a
Behavioral Team Leader, a position which, among other duties,
required her to supervise care managers.  Pl. Opp. at 1; MSJ ex.
1 ¶ 9.

During her employment with HSCS, plaintiff was also
required to perform certain "utilization review and utilization
management" functions involving the assessment of network members
for their admission to health facilities, the appropriateness of
their treatment, and their continued hospitalization.  MSJ ex. 1
¶ 10; Opp. at 1.  Plaintiff alleges that these duties did not
fall within her job description and that defendant hired other
employees to fulfill them from time to time, so that, as to her,
these duties were "extra" work, the performance of which took
between ten and twenty hours per week.  Opp. at 2.  Overall,
plaintiff worked more than forty hours each week, arriving at
around 8:30 or 9:00 A.M. and leaving anywhere from 6:00 to
8:00 P.M.  MSJ ex. 3 22:1-23:22.; Opp. at 2.  Although she
performed these allegedly "extra" duties for about two and one-
half years, she received no compensatory leave, bonus, or pay
raise.  Opp. at 2.

In October 2007, defendant's human resources manager,
Ms. Hostetter, and plaintiff's supervisor, Ms. Saucier, met with
plaintiff about a grievance that had been brought against her by

- 2 -

another employee, AJ.  Opp. at 4.  AJ complained that plaintiff
treated her poorly and specifically referenced a comment that
plaintiff once made to her -- "Where are you waddling off to?" --
to which AJ, who is obese, took particular offense.  Opp. at 4.
A second meeting was held on the matter on November 1, 2007,
which AJ attended.  Opp. at 4; MSJ ex. 1 ¶ 33.  On November 13,
2007, at a third meeting, plaintiff's employment was terminated.
Opp. at 5.  She was given a letter of explanation.  *Id*.

Plaintiff filed for unemployment benefits with the D.C.
Department of Employment Services on November 17, 2007.  Opp. at
5.  After "[p]laintiff presented a copy of her termination letter
per DOES request," DOES denied her application on the ground that
she had engaged in "misconduct."  Opp. at 6.  Plaintiff appealed.
An administrative judge held a merits hearing on January 17,
2008, at which plaintiff did not appear.  Opp. ex. 7.  On
January 18, 2009, the appeal was denied as untimely.  *Id*.

## Analysis

On a motion for summary judgment, the movant carries
the burden of demonstrating that the "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-
23 (1986).  "[A] material fact is 'genuine' . . . if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50.

## 1. FLSA Exemption

Plaintiff claims that under the FLSA she is due compensation for the "extra" time she put into performing the UR/UM duties.  Under 29 U.S.C. § 207(a)(1):

> [e]xcept as otherwise provided . . . no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Certain kinds of employment are excepted from § 207's coverage, however, including "any employee employed in a bona fide executive, administrative, or professional capacity . . . ."  29 U.S.C. § 213(a)(1).  Under 29 C.F.R. § 541.300.

> [t]he term "employee employed in a bona fide professional capacity" in [29 U.S.C. § 213(a)(1)] of the Act shall mean any employee: (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . (2) Whose primary duty is the performance of work: (I) Requiring knowledge of an

advanced type in a field of science or learning
customarily acquired by a prolonged course of
specialized intellectual instruction; or
(ii) Requiring invention, imagination, originality
or talent in a recognized field of artistic or
creative endeavor[2]

Defendant asserts that plaintiff's job was exempt from
FLSA coverage and that she is due nothing.  Plaintiff concedes
the first point, Opp. at 13, 14; Tr. 8:10-13, which is well
supported by undisputed evidence: her salary was always in excess
of $60,000 per year, Compl. ¶ 6. , MSJ ex. 1, ¶ 18; Compl. ¶ 6,
and her job was a "managerial supervisor position," MSJ ex. 3 at
11:15 -18, that demanded use of her license as a social worker in
D.C. and the skills she learned getting her masters degree in
social work from Howard University.  MSJ ex. 1 ¶ 7.

Plaintiff also concedes that, even assuming that the
UR/UM duties were "extra" duties -- *i.e.* the duties of a separate
compensable position -- and that these duties were non-exempt,[3]

_____

[2]Subject to some exceptions not applicable here, in general
"[a]n employee will be considered to be paid on a 'salary basis'
within the meaning of these regulations if the employee regularly
receives each pay period on a weekly, or less frequent basis, a
predetermined amount constituting all or part of the employee's
compensation, which amount is not subject to reduction because of
variations in the quality or quantity of the work performed."  29
C.F.R. § 541.602(a).  Satisfaction of this element is conceded.

[3]It appears from the record that the UR/UM duties were in
fact exempt work -- the "work involves an assessment of the
appropriateness and economy of admitting a member to a health
care facility of continued hospitalization, or other plan or
program of treatment," MSJ at 8 (citing ex. 1 ¶ 10), its duties
were defined by their successful completion, and not the number
of hours worked, Opp. at 2, and on the two occasions when the

"the primary duty of Plaintiff's combined duties remained exempt work." Op. at 15; *see*, 29 C.F.R. § 541.700. Plaintiff therefore admits that she "was not entitled to obtain overtime for performing the second job." Opp. at 14; *see* Tr. 5:4-12. Instead, somewhat bafflingly, she argues that somehow the "FLSA and Defendant's . . . polic[ies] required Defendant to pay Plaintiff some form of compensation for performing a second job." Opp. at 14. In support she cites to four sources: (1) an FLSA regulation, the most relevant section of which gives employers a means of providing exempt employees some form of non-salary based compensation in addition to their salary, such as a sales commission, without compromising the employee's exempt status, 29 C.F.R. § 541.604; (2) an FLSA regulation which provides a means of calculating the overtime rate when a non-exempt employee, in a single workweek, performs two or more distinct types of work, each of which has a different straight-time rate of pay, 29 C.F.R. § 778.115; (3) the defendant's internal policy of "dual employment," by which, plaintiff asserts, defendant consistently compensates exempt employees for performing "extra" work; and (4) a Department of Labor opinion which in fact significantly undermines her position that she is due additional compensation,

---

position of UR/UM Care Manager was filled, HSCS hired skilled professionals, a registered nurse and a social worker, both of whom earned salaries between $50,000 and $60,000 per year, Opp. at 13 (citing Pl. Aff. ¶ 5).

Department of Labor Opinion, FLSA 2005-14 (March 17, 2005) ("[I]f the primary duty of [an] employee is the performance of work as [an] exempt coordinator, it is our opinion that the exemption(s) under Part 541 would apply.  In that case, no additional compensation beyond the guaranteed salary required for exemption would be mandatory . . . .").  Plaintiff fails completely to explain how any of these sources obligated defendant to provide her compensation for the UR/UM duties under the FLSA.

## 2. Retaliation

"[I]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ."  29 U.S.C. § 215(a)(3).  "[I]n order to establish a prima facie case of retaliation under the FLSA, a plaintiff must demonstrate (1) that the employer was aware that plaintiff was engaged in statutorily protected activity, (2) that the employer took adverse action against the plaintiff, and (3) that there was a causal relationship between the two."  *Cooke v. Rosenker*, 601 F.Supp.2d 64 (D.D.C. 2009) (citations omitted).

Plaintiff argues first that defendant's true motive for firing her was retaliation for an informal complaint she made to Saucier in October 2007.  Plaintiff described the situation thus:

> On or around the first week of October 2007, I made
> an inquiry with Stacey Saucier regarding when the
> second position would be filled. I indicated that I
> wished to discontinue my performance on the job
> unless I received some form of compensation because
> of the demands of both positions and I had little
> time to spend with my family and friends.

Opp. ex. 7 (Pl. Aff ¶ 7).[4]

The D.C. Circuit has yet to decide whether an informal complaint suffices to trigger FLSA retaliation protection, and there is a split in the Circuits over the issue. *Cooke*, 601 F.Supp.2d at 74-75 (collecting cases). But even assuming that retaliation for making an informal complaint is cognizable under § 215(a)(3), an "employee must [still] step outside his or her role of representing the company and . . . threaten to file[] an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Hicks v. Association of American Medical Colleges*, 503 F. Supp. 2d 48, 52-53 (D.D.C. 2007) (*quoting, McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 , 1486-87(10th Cir. 1996)); *accord*, *Cooke*, 601 F.Supp.2d at 75-76. In

---

[4]Despite this affidavit testimony, during her deposition plaintiff did not remember requesting compensation for the UR/UM work during this conversation with Saucier. Opp. at 3, fn. 3. She now only recalls "making an inquiry with . . . Saucier regarding the hiring of a full time employee to perform the UR/UM care manager position." *Id*. She further states that "she never told Dr. Reynolds or anyone else that she felt it was wrong that she was not being paid for the work that she thought she was doing." Opp. at 20.

plaintiff's version of events, she made no reference to the FLSA or her legal rights under any other statute, nor did she mention possible legal action.  It is also uncontested that defendant has always categorized and considered plaintiff's position to be exempt.  MSJ ex. 3.  With nothing to connect her supposed complaint to the assertion of protected rights, the retaliation claims fails.  *Accord, Cooke*, 601 F.Supp.2d at 75-76; *Hicks*, 503 F.Supp.2d at 54.

Plaintiff's second theory of retaliation, advanced for the first time on this motion, is based on her allegation that the defendant reneged on a promise not to contest her claim for unemployment benefits.  Opp. ex.7 (Pl Aff. ¶ 20).  More specifically, plaintiff asserts that, after she sent defendant a letter on January 10, 2009, stating that she planned to contest her termination and explicitly invoking the FLSA and ERISA, defendant decided to contest her appeal of DOES's rejection of her unemployment benefits.

These allegations and this theory of retaliation are found nowhere in the amended compliant.  Nor is there evidentiary support for them in the record.  But even accepting plaintiff's unsupported factual allegations as true, and applying the generous standard for retaliatory adverse actions established by *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006), an expressed desire by defendant to challenge the DOES

appeal and defendant's appearance at the appellate hearing do not constitute adverse retaliatory action cognizable under the FLSA when (a) plaintiff reneged on her own undertaking to accept her termination, (b) plaintiff herself did not show up at the hearing, and (c) the appeal was rejected, not because of defendant's opposition, but because it was untimely.

## 3. ERISA

Although the factual and legal underpinnings of plaintiff's claim are vague, plaintiff can bring a claim alleging that defendant fired her for exercising her rights under ERISA and/or that defendant intended to deny her of ERISA protected benefits under 29 U.S.C. § 1140.  But such a claim would be based on essentially the same evidence as the FLSA retaliation claims, and it fails for substantially the same reasons: there is no evidence of any kind that defendant's actions were inspired by retaliatory animus or were taken to interfere with plaintiff's pension benefits,[5] and defendant's actions concerning the DOES appeal were not adverse.

## 4. Defamation

"A plaintiff bringing a defamation action . . . must show: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant

---

[5]The plaintiff's pension benefits would not have vested until July 9, 2009, nearly a year and a half after she was terminated.  Opp. at 27.

published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."[6]  *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (internal citation and quotations omitted).

Plaintiff argues that the termination letter she received was defamatory, and that she was harmed by its publication to DOES and her employment file.  Opp. at 21.  But in nearly the same breath plaintiff correctly concedes that "information provided to DOES is subject to an absolute privilege."  Opp. at 22; *Turner v. Federal Express Corp.*, 539 F.Supp.2d 404, 408-409 (D.D.C. 2008) ("Under settled District of Columbia law, [r]eports to the unemployment compensation board (a.k.a. Department of Employment Services) concerning the termination  of an employee are absolutely privileged and cannot support a claim for libel.") (internal quotations and citations omitted).  Her arguments that this absolute privilege is somehow not absolute here are confused and unconvincing.

Defendant's publication of the termination letter to plaintiff's file was protected by a qualified privilege because

---

[6]Neither party contests that D.C. law applies to this claim.

"[t]he law has long recognized a privilege for anything 'said or written by a master in giving the character of a servant who has been in his [or her] employment.'"[7]  *Turner*, 539 F.Supp.2d at 409 (*quoting, Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 879 (D.C. 1998) (*quoting, White v. Nicholls*, 44 U.S. 266, 287, 3 How. 266, 11 L.Ed. 591 (1845)) (further citations omitted).  This master/servant privilege allows an employer to make covered "statements against [an employee] even if false," *Washington Times Co. v. Bonner*, 86 F.2d 836, 840 (1936), unless a plaintiff can show "malice," defined as "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will," *Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995) (internal quotation omitted).

The presence of malice is therefore measured by the "primary motive by which the defendant is apparently inspired" in disseminating a statement, not the truth of the assertions. *Columbia first Bank*, 664 A.2d at 656.  In this determination, "the declarant will be presumed to have been actuated by pure motives in its publication . . . and the plaintiff therefore has

---

[7]"[T]he existence of the privilege is a question of law for the court[;] whether it was abused by the defendant, is a question of fact for the jury."  *Novecon Ltd. v. Bulgarian-American Enterprise Fund*, 190 F.3d 556, 566 (D.C. Cir. 1999).

the burden of proving that the declarant acted with malice."  *Id*. (internal quotations and citations omitted).  "Moreover, unless the statement is so extreme, unreasonable, or abusive that a reasonable trier of fact would have to find malice inherent in the statement itself, malice must be proven by extrinsic evidence."  *Id.* (internal citation omitted).  "[I]f the language of the communication and the circumstances attending its publication by the defendant are as consistent with the nonexistence of malice as with its existence, there is no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant."  *Novecon Ltd. v. Bulgarian-American Enterprise Fund*, 190 F.3d 556, 566 (D.C. Cir. 1999) (internal quotation omitted).

The termination letter at issue is not facially malicious, and plaintiff offers no extrinsic <u>evidence</u> of malice. She only argues that defendant knew or should have known that the statements in the letter were false -- an argument that oddly focuses on defendant's asserted failure to uncover sufficient evidence to prove that plaintiff harassed AJ or discriminated against her under federal and District anti-discrimination laws. Opp. at 23-25.  By its terms, however, the letter is not based on such a determination, and does not even mention the word "discriminate."  Instead, the letter speaks to the plaintiff's general lack of sensitivity to AJ and to defendant's interests,

to plaintiff's inability to foster a team environment, and to the manner in which plaintiff handled the situation generally; all of which created "serious concerns regarding [the plaintiff's] management skills." Opp. ex. 6. As a whole, the record amply supports the defendant's good faith, even to the extent that no reasonable juror could believe that the letter was published with malicious motive.

Plaintiff last argues that HSCS made some unspecified defamatory statements to prospective employers to which plaintiff had applied. This claim is unsupported by any evidence that such statements were made, let alone what they were,[8] and such statements would be covered by the "master/employee" privilege in any event. See, *Turner*, 539 F.Supp.2d at 409.

*          *          *

For the reasons given above, defendant's motion for summary judgment, Dkt. #12, will be granted by an appropriate order that accompanies this memorandum.


JAMES ROBERTSON
United States District Judge

---

[8]Plaintiff makes a similar claim that at some unspecified point in time, unnamed individuals at HSCS made unspecified statements about plaintiff that were defamatory. Opp. at 23. This assertion, too, fails for its complete lack of evidentiary support.